**Ruth M. BLOUGH, Plaintiff,**

v.

**FOOD LION, INC., Defendant.**

**Action No. 2:92cv436.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 10, 1992.

Robert J. Haddad, Shuttleworth, Ruloff, Giordano & Kahle, Virginia Beach, Va., for plaintiff.

Robert William McFarland, McGuire, Woods, Battle & Boothe, Norfolk, Va., for defendant.

Judith Dockery, Virginia Beach, Va., for interested party Tidewater Pastoral Counseling Service.

OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

Plaintiff, Ruth M. Blough, has sued defendant, Food Lion, Inc., for physical injuries and emotional distress she suffered when a can fell from a top shelf and struck her hand in a Food Lion's store on December 7, 1989. Blough filed this action in the Circuit Court for the City of Suffolk on July 17, 1991, and in her first motion for judgment she sought $48,959.78. Upon Blough's motion, by order entered May 22, 1992, the circuit court permitted Blough to amend her complaint to increase the damages to $248,959.78. The circuit court also granted Blough's motion to continue the case from its original trial date of May 29, 1992. By notice filed June 11, 1992, Food Lion removed the case to this court, claiming diversity of citizenship and an amount in controversy that exceeded $50,000.

This matter comes before the court for resolution of two discovery matters. Blough has moved to compel Food Lion to produce an accident report, and Tidewater Pastoral Counseling Service, Inc. (hereinafter "TPCS"), a nonparty, has moved to quash a subpoena duces tecum issued by Food Lion for all of Blough's counseling records. Blough, Food Lion, and TPCS appeared, through counsel, at a hearing on these motions on July 29, 1992.

### I. Plaintiff's Motion to Compel Production of the Accident Report

On July 22, 1992, Blough moved to compel Food Lion to respond to its request for production of a report filled out by a Food Lion employee at the time of the accident. Food Lion invoked the work product doctrine and refused to produce

the report, claiming that the report was prepared "in anticipation of litigation." [1]

Rule 26(b)(3) of the Federal Rules of Civil Procedure immunizes from discovery work product that is prepared "in anticipation of litigation." This immunity, however, "never reaches to protect from discovery actual evidence taken from the scene or facts about the scene or incident." *National Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir.1992). Thus, the critical issue is whether Food Lion prepared the accident report "in anticipation of litigation." In discussing the extent to which the work product rule provides immunity from discovery for documents related to an investigation conducted promptly after a fire at a plant, the Fourth Circuit recently stated:

> [M]embers of society tend to document transactions and occurrences to avoid the foibles of memory and to perpetuate evidence for the resolution of future disputes. And because litigation is an ever-present possibility in American life, it is more often the case than not that events are documented with the general possibility of litigation in mind. Yet, "[t]he mere fact litigation does eventually ensue does not, by itself, cloak materials" with work product immunity. The document must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation. Thus, we have held that materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in

anticipation of litigation within the meaning of Rule 26(b)(3). Following any industrial accident, it can be expected that designated personnel will conduct investigations, not only out of a concern for future litigation, but also to prevent reoccurrences, to improve safety and efficiency in the facility, and to respond to regulatory obligations.

*Id.* at 984 (citations omitted).

At the hearing on July 29, 1992, other than the accident report itself, Food Lion presented no evidence that it wrote the report in anticipation of litigation.[2] It stated through counsel, however, that it routinely creates accident reports for all known third-party accidents immediately following the accidents. Food Lion created the accident report in this case on the day Blough was injured in the store. Food Lion did not at that time face an "actual claim." Nor has Food Lion presented evidence of circumstances that would suggest that it faced "a potential claim ... that reasonably could result in litigation." *Id.*

After reviewing the accident report in this case and the circumstances of its creation, the court concludes that Food Lion created the report in the regular course of business, not in anticipation of litigation. The accident report, therefore, does not qualify as work product and is discoverable. Accordingly, Blough's motion to compel Food Lion to produce the accident report is GRANTED.[3]

## II. Food Lion's Subpoena Duces Tecum for Plaintiff's Counseling Records

On June 30, 1992, pursuant to Rules 34(c) and 45 of the Federal Rules of Civil

---

**1.** In its objection to Blough's request, Food Lion stated: "A General Liability Claims Notice to Counsel report was prepared by Michelle La-Penna and forwarded to Food Lion's home office on December 7, 1989. This General Liability Claims Notice to Counsel report was prepared in anticipation of litigation for Food Lion's counsel and is, therefore, not discoverable." Motion to Compel & Brief in Support Thereof at 1.

**2.** Food Lion argued that the form of the report itself and the instructions on it identify it as more than a mere business record; rather, spe-

cific language on the report indicates that Food Lion made it in anticipation of litigation. Such form language, however, does not control the determination of whether Food Lion wrote this particular accident report in anticipation of litigation.

**3.** This court has repeatedly ruled that such Food Lion accident reports are not work product immune from discovery. Consequently, this court will entertain no further objections to discovery of such accident reports, absent special circumstances in a particular case.

Procedure, Food Lion issued a subpoena duces tecum to TPCS, which is not a party to these proceedings, directing that it produce by July 13, 1992, "any and all medical records, writings, reports and other documents which pertain or in any way relate to consultations, examinations and treatment of" Blough. On July 8, 1992, TPCS, represented by counsel, moved to quash the subpoena duces tecum on the grounds that the records are protected under the privilege established by Va.Code Ann. § 8.01–400. On July 24, 1992, pursuant to Rule 37 of the Federal Rules of Civil Procedure, Food Lion moved to overrule TPCS's motion to quash and to compel it to produce the requested records. Food Lion contends that plaintiff refers to her religious counseling in support of her claim for emotional distress, and that Food Lion, therefore, is entitled to access the essential documents related to that counseling. Food Lion also requests an award of costs and attorney fees relating to its motion to compel.

Virginia law governs the substantive issues in this case. Consequently, Virginia law also governs the privilege invoked by TPCS. *See* Fed.R.Evid. 501. The Virginia Code provides:

> No regular minister, priest, rabbi or accredited practitioner over the age of eighteen years, of any religious organization or denomination usually referred to as a church, shall be required in giving testimony as a witness in any civil action to disclose any information communicated to him in a confidential manner, properly entrusted to him in his professional capacity and necessary to enable him to discharge the functions of his office according to the usual course of his practice or discipline, wherein such person so communicating such information about himself or another is seeking spiritual counsel and advice relative to and growing out of the information so imparted.

Va.Code Ann. § 8.01–400 (Michie 1992).

At the hearing on July 29, 1992, TPCS established the following facts. TPCS is a multidenominational, nonprofit counseling service operated through eight churches. All the counselors at TPCS are ordained and accredited by their respective churches. Individuals who use the services of TPCS normally pay a fee, although often individuals who cannot afford the fee pay a reduced fee or no fee at all. Rita Hickey, a former nun, is a counselor at TPCS, is an accredited practitioner in the Roman Catholic Church, and is over the age of eighteen years. Blough sought spiritual counsel and advice from Hickey, and in the process communicated to Hickey, in a confidential manner, information about herself. Blough properly entrusted this information to Hickey in her professional capacity, and the information was necessary to enable Hickey to discharge the functions of her office according to the usual course of her practice. Hickey followed her usual practice and took notes in her meetings with Blough. When Food Lion issued the subpoena duces tecum to TPCS for documents related to Hickey's counseling of Blough, Hickey, through TPCS and then individually,[4] asserted the privilege and refused to disclose any information communicated to her by Blough.[5]

---

**4.** The court refused to allow TPCS to assert the privilege, finding that it belonged properly to the individual clergyperson, not to the organization.

**5.** Food Lion was not alone in seeking production of the documents related to Hickey's counseling of Blough. Counsel for plaintiff indicated at the hearing on July 29, 1992, that Blough also seeks the documents. This situation exposes a peculiar feature of the privilege established by § 8.01–400. The statute grants the privilege only to the clergyperson, not to the communicant. *Seidman v. Fishburne–Hudgins Educ. Found., Inc.,* 724 F.2d 413, 415–16 & n. 2 (4th Cir.1984). Vesting the clergyperson with

the privilege without regard to the wishes of the communicant, however, serves no apparent purpose. In fact, in this case it has frustrated the needs of the communicant, the person whose confidences such statutes have traditionally sought to protect. *See id.* (citing Reese, *Confidential Communications to the Clergy,* 24 Ohio St.L.J. 1 (1963)). Moreover, by giving the clergy the exclusive right to assert the privilege, the statute actually discourages candid disclosure in that the clergyperson can choose to reveal a confidential communication without the consent of the communicant. *See Seidman,* 724 F.2d at 416 ("The priest ... did not invoke the privilege, but testified freely in a pretrial deposi-

Food Lion argues that the statute privileges only "testimony [given] as a witness in any civil action," Va.Code Ann. § 8.01–400, and that in this case Food Lion seeks "documents," not "testimony." TPCS, on the other hand, emphasizes the language of the statute that protects against compelled disclosure of "any information" in giving testimony as a witness in any civil action. Although a close question,[6] this court concludes that to compel the production of these "documents" would render meaningless the clear protection against disclosure of confidential communications to the clergy provided in section 8.01–400.[7]

Hickey's notes would reveal the substance of Blough's confidential communications to Hickey. Consequently, Hickey's testimony as a witness in the civil trial would no longer be needed, other than to lay a proper foundation for the notes. The testimony required to lay a proper foundation would not itself be privileged. Moreover, Food Lion could use the notes to cross-examine Blough, thereby placing into evidence the substance of the notes. Thus, a party seeking disclosure of such confidential communications could easily subvert the protections provided by the statute in cases in which a prudent clergyperson had documented the counseling.[8] This court holds, therefore, that the protection of section 8.01–400 provided to the clergy, "in giving testimony as a witness in any civil action," against compelled disclosure of "any information communicated to them in a confidential manner" also extends to their disclosure, in any civil action, of documents that contain the substance of that testimony.

Accordingly, TPCS's motion to quash Food Lion's subpoena duces tecum is GRANTED and Food Lion's motion to compel production of those documents is DENIED, as is Food Lion's request for costs and attorney fees in its motion.

It is so ORDERED.

---

tion about his conversation with Mrs. Seidman.").

6. This privilege is purely a creature of statute, and is not a common law privilege. *Seidman,* 724 F.2d at 415. Therefore, it should be strictly construed.

7. The challenge in this case to the application of the privilege in § 8.01–400 reveals a number of problems with the language of the statute that need clarification by the Virginia General Assembly. First, the statute leaves unclear whether, in a civil action, it protects against all compelled disclosure, regardless of its form, or whether it protects only against compelled testimonial disclosure. Second, the statute inexplicably grants the privilege exclusively to the clergy, regardless of whether the communicant consents to disclosure. *See supra* note 5. Third, the statute does not address whether the privi-

lege extends to counseling services provided by clergy, for a fee, in cases in which those counseling services differ from secular counseling only by their emphasis on "spiritual" issues, rather than psychopathological issues. *Cf.* Va. Code Ann. § 8.01–400.2 (Michie 1992) (psychologist-client privilege); *Commonwealth v. Cronin,* 2 Va.Cir.Ct. 488, 503 (Rich.1855) (holding that Roman Catholic priest was exempt from testifying as to what was confessed to him and expressing concern that compelled disclosure would deter individuals from seeking spiritual aid).

8. As for Food Lion's argument that application of the privilege would be unfair because it would prohibit access to relevant evidence on a matter that is an integral part of Blough's claim against Food Lion, the court notes that Blough also has no access to her records. *See supra* note 5.